FILED
2005 Mar-17  AM 09:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

PATRICK PATRONAS,

      Plaintiff,

vs.                          CASE NO. CV-03-J-749-J

MARSHALL DURBIN FOOD
CORPORATION,

      Defendant.

## MEMORANDUM OPINION

Pending before the court are cross motions for summary judgment. The plaintiff filed a motion for partial summary judgment on the issue of liability (doc. 33) and evidence (doc. 35), and the defendant filed a motion for summary judgment and evidence (doc. 34). The parties responded to each other's motions (docs. 36 and 37) and the plaintiff thereafter filed a reply (doc. 38). The court having considered the pleadings, submissions and evidence of the parties, finds as follows:

## I. FACTUAL BACKGROUND

This case is brought pursuant to the Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq*., more commonly referred to as the Clean Water Act ("CWA"). The plaintiff filed this action pursuant to 33 U.S.C. § 1365(a), the citizen suit provision of the CWA. This authorizes a citizen to commence a civil action in federal court

against any person who is alleged to be in violation of an effluent standard or limitation. *McAbee v. City of Fort Payne*, 318 F.3d 1248, 1251 (11th Cir.2003), citing 33 U.S.C. § 1365(a).  Congress passed the CWA in order "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. To that end, the Clean Water Act prohibits the discharge of pollutants into the navigable waters of the United States, unless one of several exceptions applies.[1] 33 U.S.C. § 1311(a). One such exception is where a polluter has been issued a National Pollution Discharge Elimination System ("NPDES") permit. 33 U.S.C. § 1342. Once issued, the permit defines the holder's obligations under the Act.  A state agency may be given the authority to administer the NPDES permit system if the state regulatory scheme meets certain criteria, although the EPA retains the ability to veto the issuance of a proposed state permit. §§ 1342(b), 1342(d)(2).  Alabama has established an EPA-approved program whereby the Alabama Department of Environmental Management

---

[1]Defendant argues that because it discharges solely to the Jasper WWTP and not to a "navigable waterway," it cannot be sued for NPDES violations.  Aside from evidence before this court that defendant does discharge to a navigable waterway, defendant's argument is simply is not the law.

> Congress intended to make the 1972 Act apply to its broadest limits. 2 U.S.Code Cong. & Admin.News, pp. 3742-43 (1972). The fact that defendant may discharge through conveyances owned by another party does not remove defendant's actions from the scope of this Act. Defendant knows or should have known that the city sewers lead directly into the Mississippi River and this is sufficient to satisfy the requirements of discharging into "water of the United States." 33 U.S.C. § 1311(a), § 1362(7).

*U.S. v. Velsicol Chemical Corp.*, 438 F.Supp. 945, 946 -947 (D.C.Tenn. 1976). The court considers this argument of defendant in greater depth, *infra.*

("ADEM") is responsible for issuing NPDES permits in Alabama, pursuant to the Alabama Water Pollution Control Act ("AWPCA"), §§ 22-22-1, *et seq.* *See* §§ 22-22-9(g), § 22-22A-5(10), Ala.Code 1975; Ala.Admin.Code R. 335-6-6-.01. The holder of a state NPDES permit is subject to both federal and state enforcement for failure to comply with its terms. 33 U.S.C. §§ 1319, 1342(b)(7), 1342(i).

The plaintiff alleges that the defendant, a poultry processing plant, is in violation the  discharge limits  established pursuant to the CWA in the defendant's State Indirect Discharge ("SID") permit.  Complaint, ¶ 6; def. exhibit 1 to defendant's motion for summary judgment.  In accordance with that permit, the defendant discharges its waste to the Jasper Waste Water Treatment plant, ("Jasper WWTP"), a publicly owned treatment works ("POTW") which in turn discharges to a navigable water way, pursuant to a NPDES permit.[2]  The plaintiff alleges that the defendant has violated the biological oxygen demand ("BOD") discharge limits of its SID permit. Complaint, ¶ 17.  Plaintiff alleges 658 discharge violations ranging in time from 2000 to September, 2004.  Brief in support of plaintiff's motion (doc. 35) at 16-20.  In their respective motions, the parties raise the issues addressed below.

---

[2] *See* 33 U.S.C. § 1317(b), authorizing pretreatment standards for effluent discharges to publicly owned treatment works.

## II.  SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  A party moving for summary judgment has the initial responsibility of informing this court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548.

Once the moving party has satisfied this initial burden, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company,* 32 F.3d 520, 523 (11th Cir.1994). Rule 56(e), Fed.R.Civ.Pro., requires the nonmoving party to "go beyond the pleadings" and by

"affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts'" showing there exist genuine issues for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Cottle v. Storer Communication, Inc.,* 849 F.2d 570, 575 (11th Cir.1988). "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather decide whether such issues exist to be tried." *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 919 (11th Cir.1993).

In *Florida Public Interest Research Group Citizen Lobby, Inc. v. E.P.A.*, 386 F.3d 1070, 1082-1083 (11th Cir.2004), the Court stated:

> Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). In making this assessment, we "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir. 1997), and "resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. v. Sun Life Ins. Co.,* 894 F.2d 1555, 1558 (11th Cir.1990); *see also Wooden v. Bd. of Regents of the Univ. Sys. of Ga.,* 247 F.3d 1262, 1271 n. 9 (11th Cir.2001) (citing *Rosen v. Bezner,* 996 F.2d 1527, 1530 n. 2 (3d Cir.1993) ("[B]ecause summary judgment may only be granted where there is no genuine issue of material fact, any purported 'factual findings' of the trial court cannot be 'factual findings' ... but rather are conclusions as a matter of law....")).

## III.  LEGAL ANALYSIS

## A.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Although styled "defendant's motion for summary judgment" (doc. 34), the defendant does not address the substantive merits of this litigation.  Rather, the defendant makes several arguments regarding the justiciability of this case.  The court therefore addresses the defendant's motion first.

## 1.  STANDING

Defendant argues that plaintiff lacks the necessary standing to bring a citizen suit as defined by *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 361 (1992).  Defendant's memorandum, at 4.  In *Lujan*, the Supreme Court held that for a private citizen to demonstrate stating sufficient to bring a case under the citizen suit provision of the CWA, a plaintiff must show an injury in fact by showing his activities on the affected waterway are affected, limited, or somehow impacted by the violations in question. *Id.*, 504 U.S. at 560-561.  *See also Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993 (11th Cir.2004).  The plaintiff here has submitted an affidavit which carefully and meticulously describes how his activities on the affected waterways are impacted by the defendant's permit violations.  *See* Patronas' affidavit, submitted as exhibit 4 to plaintiff's brief in support of plaintiff's motion.

6

The defendant argues that plaintiff's statements concerning his observations of diminished water quality are not sufficient.  However, no requirement exists that  the plaintiff must prove the defendant's violations have actually harmed the water for the plaintiff to establish standing.  *See e.g., Friends of the Earth v. Laidlaw*, 528 U.S. 167, 183, 120 S.Ct. 693, 705 (2000) ("We have held that environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity").  Defendant's own mandatory reports show it is in violation of its permit.  Under *Lujan*, all the plaintiff must establish is that he recreates in the area concerned and that defendant is in violation of its permit.[3]

---

[3]As stated *infra*, the defendant argues that it does not discharge to a navigable waterway, but only to the Jasper WWTP.  Defendant's memorandum, ¶ 2.  Defendant states "[t]here is no evidence that Marshall Durbin has discharged anything into either Town Creek, Cane Creek or Mulberry Fork ..." and "[t]he defendant does not discharge any waste directly into any other body of water [than the Jasper WWTP]".  Defendant memorandum, at 14, 19.  In response, the plaintiff has submitted evidence that defendant discharges directly into a waterway, as well as to the Jasper WWTP, although the direct discharges are not the basis of the plaintiff's claims in this case.  Exhibits 2 and 3 to plaintiff's response, NPDES permit for defendant.  The court finds that defendant's representation that it *solely* discharges into the Jasper WWTP is simply not true.  This apparent misrepresentation is then sworn to by James Faison in his affidavit, which includes the statement under oath that defendant discharges *solely* to the Jasper POTW.  Defendant exhibit 2 to defendant's motion for summary judgment, at ¶ 2 ("Marshall Durbin does not discharge any wastewater to any stream or other waters of the United States.)"  While not material to the issues before the court in this litigation, this statement certainly appears to be untrue in light of defendant's inclusion in NPDES permit ALG150022.  Exhibit 3 to plaintiff's response to defendant's motion.  In a March 26, 2002, letter from ADEM to defendant, inclusion in this permit is for three separate outfalls to Town Creek.  Exhibit 2 to plaintiff's response to defendant's motion.  That letter states, "Coverage under this permit does not authorize the discharge of any pollutant or wastewater that is not specifically identified in the permit ..."  *Id.*  The NPDES permit states that the discharges authorized are those "associated with food and

The defendant seems to misunderstand the legal requirements for standing in a CWA case. The defendant fails to recognize in any of its pleadings that under the CWA, the plaintiff does not have to prove actual damage to a stream caused by the discharger's violations. For example, the defendant argues that the plaintiff has not shown that the lack of wildlife or the color of the water are "abnormal" for the area. However, no basis exists to require such evidence to establish standing.[4] *See Laidlaw*, 528 U.S. at 181, 120 S.Ct. at 704 ("The relevant showing for purposes of Article III standing, however, is not injury to the environment but injury to the plaintiff").

In his deposition, the plaintiff testified that he had concerns over the water (plaintiff depo. at 27); he suspected the oxygen was being depleted (plaintiff depo. at 62); he observed a greenish tint to Mulberry Fork (plaintiff depo. at 63); he noticed less wildlife than in surrounding areas (plaintiff depo. at 63-64, 79-81); he has caught fish (plaintiff depo. at 68); he boats and walks in the relevant area (plaintiff depo. at 68-69); he thinks the aquatic flora has been adversely affected (plaintiff depo. at 71);

---

kindred products industries consisting of stormwater, non-contact cooling water, cooling tower and boiler blowdown ..." Plaintiff's exhibit 3 to plaintiff's response. Defendant resubmitted the same affidavit of James Faison as exhibit 6 to its response to plaintiff's motion for summary judgment (doc. 37).

[4]Such evidence would seem to be more relevant to the issue of the appropriate amount of statutory penalties to be imposed.

and that he has been in the area more than ten, but less than twenty times since 1999

(plaintiff depo. at 87). In *Lujan v. Defenders of Wildlife*, the Court held that:

> the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing. See, *e.g., Sierra Club v. Morton,* 405 U.S., at 734, 92 S.Ct., at 1366. "But the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Id.,* at 734-735, 92 S.Ct., at 1366. To survive the Secretary's summary judgment motion, respondents had to submit affidavits or other evidence showing, through specific facts, not only that listed species were in fact being threatened by funded activities abroad, but also that one or more of respondents' members would thereby be "directly" affected apart from their "'special interest' in th[e] subject." *Id.,* at 735, 739, 92 S.Ct., at 1366, 1368. See generally *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977).

*Lujan,* 504 U.S. at 562-563, 112 S.Ct. at 2137-2138. Similarly, the Fourth Circuit, in

*Friends of the Earth, Inc v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th

Cir.2000), noted that "the damage is to an individual's aesthetic or recreational

interests. The Supreme Court has made it clear that such interests may be vindicated

in the federal courts (citations omitted)." *Id.* The Supreme Court has also stated that

"we see nothing 'improbable' about the proposition that a company's continuous and

pervasive illegal discharges of pollutants into a river would cause nearby residents to

curtail their recreational use of that waterway .... and that is enough for injury in fact."

*Friends of the Earth, Inc v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 184,

120 S.Ct. 693, 706, 145 L.Ed.2d 610 (2000).

9

The plaintiff also satisfies the standing requirement of an actual injury "fairly traceable" to the defendant and likely redress if the plaintiff prevails.[5]  *See e.g., Lockett v. EPA*, 319 F.3d 678, 682 (5th Cir.2003).   The defendant argues that "without evidence tracing the defendant's actions to the plaintiff's alleged damages, this Court is left to use only supposition and speculation to locate the creation of a genuine issue of material fact."  Defendant's memorandum, at 24.  The defendant then cites *Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 72 (3rd Cir.1990), for the proposition that the plaintiff must prove his damages are "fairly traceable" to the actions of the defendant.  That case states that "[t]he requirement that plaintiff's injuries be 'fairly traceable' to the defendant's conduct does not mean that plaintiffs must show to a scientific certainty that defendant's effluent, and defendant's effluent alone, caused the precise harm suffered by the plaintiffs. A plaintiff need not prove causation with absolute scientific rigor to

---

[5]The defendant quotes testimony from the plaintiff's deposition that the plaintiff was asked "...you've never become physically sick from your recreational pursuits at Cane Creek?" and the plaintiff responded "That's correct."  Defendant's memorandum at 7, quoting plaintiff depo. at 69.  The court can find no legal requirement that the plaintiff must become physically ill to establish standing in a CWA case.  The defendant also argues that "the plaintiff cannot show his claims are concrete and particularized as demanded by the Supreme Court in *Lujan*, 504 U.S. 555, but they are totally without any supporting basis from scientific or technical data or third parties."  Defendant memorandum, at 14.  The court notes that the Discharge Monitoring Reports ("DMR's"), required to be filed by defendant pursuant to the CWA and the NPDES permits, are "scientific or technical data" supporting that the defendant is in violation of its permit.

defeat a motion for summary judgment." *Powell Duffryn Terminals Inc.*, 913 F.2d at 72.[6]

Having considered the foregoing, the court finds that the plaintiff has shown an actual injury, fairly traceable to the defendant, and likely redress of his injuries should the plaintiff prevail. This is sufficient to establish standing under the CWA.

---

[6]The Court in *Powell Duffryn Terminals* continued as follows:

> In order to demonstrate that they are more than "concerned bystanders," plaintiffs need only show that there is a "substantial likelihood" that defendant's conduct caused plaintiffs' harm. *Duke Power Co.,* 438 U.S. at 75 n. 20, 98 S.Ct. at 2631 n. 20, 57 L.Ed.2d 595 (1978). In a Clean Water Act case, this likelihood may be established by showing that a defendant has 1) discharged some pollutant in concentrations greater than allowed by its permit 2) into a waterway in which the plaintiffs have an interest that is or may be adversely affected by the pollutant and that 3) this pollutant causes or contributes to the kinds of injuries alleged by the plaintiffs.

*Id.*, 913 F.2d at 72. Another court, also considering the issue of injury sufficient for standing, quoted *Powell Duffryn Terminals* as follows:

> Mark Muhich ("Muhich") stated that, during a number of his bird watching trips in Galveston Bay, he had observed discolored water, oil, and grease, and had detected unpleasant odors; he also asserted that polluted water impaired his enjoyment of bird watching. The Third Circuit has held that this precise sort of injury satisfies the "injury in fact" requirement for standing. *Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals, Inc.,* 913 F.2d 64, 71 (3rd Cir.1990) (finding sufficient injury where plaintiff organization submitted affidavit of member who stated that he was offended by brown color and bad odor of water body adjacent to park where he went bird watching), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991).

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc,.* 73 F.3d 546, 556 -557 (5th Cir.1996). These are the exact type of injuries the plaintiff before this court has alleged as well.

## 2.  PRIOR ADMINISTRATIVE ACTION

The defendant argues that because it is already under an enforcement action/consent order from the Alabama Department of Environmental Management ("ADEM"), this case is barred under the CWA.  The defendant alleges the prior consent order in question is still in effect and it is still paying penalties under that consent order.   That consent order was entered in November, 2001.  Defendant's memorandum, ¶¶ 7-8.

The right to bring a citizen suit is limited if there is already an enforcement action being "diligently prosecuted" by the state when the citizen suit is filed.   33 U.S.C. § 1319(g)(6)(A). Section 1319(g)(6)(A) states in relevant part:

> [A]ny violation ... with respect to which a State has commenced and is diligently prosecuting an action under a State law comparable to this subsection ... shall not be the subject of a civil penalty action under ... section 1365 of this title.

The Eleventh Circuit Court of Appeals has considered this issue and held as follows:

> Courts that have addressed § 1319(g)(6)(A)(ii)–the "diligent-prosecution bar"– have interpreted the statute to bar citizen suits when three requirements are satisfied.  First, the state must have "commenced" an enforcement procedure against the polluter. *Ark. Wildlife Fed'n v. ICI Americas, Inc.,* 29 F.3d 376, 379 (8th Cir.1994).  Second, the state must be "diligently prosecuting" the enforcement proceedings. *Id.* at 380. Finally, the state's statutory enforcement scheme must be "comparable" to the federal scheme promulgated in 33 U.S.C. § 1319(g).

*McAbee v. City of Fort Payne,* 318 F.3d 1248, 1251 (11ᵗʰ Cir. 2003).  The only action to which defendant cites is an administrative action brought by ADEM in 2001. Defendant argues this is the enforcement action which preempts the plaintiff's lawsuit under 33 U.S.C. § 1319(g).

In the November, 2001 Consent Order, the defendant agreed to pay $18,600 for its past violations.[7]  Affidavit of James Faison, ¶¶ 5-6.  *See also* defendant's exhibit 5.  Under the Consent Order resulting from the administrative action, the defendant was "warned it would be fined for its future violations of the NPDES permits." Defendant's brief at 26.  Given that the defendant's violations have not ceased since November, 2001, the court is of the opinion that this Consent Order cannot be considered "diligent prosecution ... to require compliance with the standard, limitations, or order."  33 U.S.C. § 1319(g)(6)(A).  In fact, the Seventh Circuit commented on such arguments in *Friends of Milwaukee's Rivers v. Milwaukee Metropolitan Sewerage District.*  The Court noted that if a state could indefinitely

---

[7]That Consent Order found that since defendant's current permit had issued on January 13, 1999, 88 documented violations of the permit had occurred.  Def. exhibit 5 to defendant's motion for summary judgment, at ¶¶ 3, 5.  Interestingly, the defendant argues that "Marshall Durbin has paid penalties to ADEM for alleged violation of State Indirect Discharge Permit IU 396400057 from November 5, 2001, through the present time.  Defendant's memorandum, ¶ 7. Defendant cites to the affidavit of James Faison, def. exhibit 2, for support for this proposition. The affidavit states that "Marshall Durbin has paid penalties to ADEM for discharge violations that have occurred since the effective date of the Order."  Faison depo., ¶ 7.  He does not address which of the 658 discharge violations alleged by plaintiff may have been included with these penalties.

13

continue an enforcement action so as to ensure it always has on the back burner a court action that has been "commenced" before any later citizen suit could be filed, that arrangement would eviscerate the timely commencement requirement because the agency could wait as long as it liked before responding to any citizen suit. *Friends of Milwaukee's Rivers,* 382 F.3d 743, 753 n. 5 (7th Cir.2004).  Similarly, in the facts before this court, defendant seeks to hide behind a four year old consent order pursuant to which it paid a minimal fine and which has done nothing to prevent ongoing violations.

The Consent Order on which defendant relies also required the defendant to submit a "BOD Reduction Plan" to ADEM.  Def. exhibit 5, at 3. The time frames given for implementation of this plan were supposedly binding on the defendant.  *Id.* The Consent Order also included stipulated penalties of $200.00 per day for violations of the BOD daily maximums and $400.00 for violations of monthly maximums.  *Id.* Defendant offers no evidence that it has ever paid these stipulated penalty amounts. The Consent Order also states that failure to comply with the Consent Order will be cause for the commencement of legal action, which has not occurred.  *See* def. exhibit 5, ¶¶ H, K.

In a similar case, Judge Lynwood Smith of the Northern District of Alabama examined what constituted ADEM "diligently prosecuting" a case. *See Cahaba River*

14

*Society v. Gold Kist, Inc.*, CV 01-S-1725-S (July 30, 2002).  There, as in the case before this court, the defendant and ADEM entered a Consent Order pursuant to an administrative enforcement action because of permit violations.  A civil penalty was imposed and defendant agreed to submit a plan to limit its permit violations.  It also included stipulated penalties for one year after entry of the Consent Order.  Judge Smith considered 33 U.S.C. § 1319(g)(6)(A)(ii) and (iii).  He noted that both subsections required the opportunity for public notice and comment as well as a means for review of a final consent order by a federal court.  Judge Smith further ruled that, at a minimum, the state law which is "comparable" must allow for some type of notice and public participation.  *Cahaba River Society* opinion, at 16. Judge Smith concluded that § 22-22A-5(18), Ala.Code, is not comparable to the CWA provision because it does not allow participation by members of the public prior to an order imposing civil

penalties.[8]  *Id.,* at 18. This same holding was later reached by the Eleventh Circuit

Court of Appeals in *McAbee v. City of Fort Payne,* 318 F.3d 1248 (11th Cir.2003).

---

[8]The defendant identifies §22-22A-5(18) *Ala.Code.* as the state law comparable to the CWA.  Defendant's memorandum, at 27.  The Alabama State Legislature revised this law to allow public participation.   The defendant states that the changes "have addressed the issues brought forward by *McAbee* and created a regulatory scheme in Alabama that is comparable to the federal scheme provided in the Clean Water Act." *Id.*  This does not help defendant.  The Consent Order at issue was entered in 2001. *McAbee* was decided by the Eleventh Circuit Court of Appeals in 2003.  The changes in the law to bring it in line with 33 U.S.C. § 1319 were enacted by the Alabama legislature on June 26, 2003.  Therefore, the 2001 Consent Order was entered prior to any changes in Alabama law in response to *McAbee.*  Thus, the Consent Order was necessarily under an Alabama law ***not comparable*** to § 1319.  The changes include the following:

> The department shall commence enforcement action under this paragraph a. by notifying the person subject thereto in writing of the alleged violation and affording the person an opportunity for an informal conference with the director or his or her designated representative concerning the alleged violation and any proposed order. The informal conference shall not be subject to the procedures for hearings under Section 22-22A-7. Before issuing any consent or unilateral order under this section, the department shall cause public notice to be published for one day in a newspaper of general circulation in the area where the alleged violation occurred and ... on the website of the department for the duration of the comment period .... The notice shall ... indicate that persons may submit written comments to the department and request a hearing on the proposed order within 30 days of the first date of publication. The department may hold a hearing if the information submitted in support of the request is material and if a hearing may clarify one or more issues raised in the written comments .... At any such hearing, the department shall provide a reasonable opportunity for persons subject to the proposed order and persons who submitted written comments on the proposed order to be heard and to submit information to the director or his or her designated representative, provided, however, that the hearing shall not be subject to the procedures for hearings under Section 22-22A-7, or practices or procedures governing public hearings....

§22-22A-5(18)a.4, *Ala.Code.*  The court makes no determination whether this section of the Alabama Code, as now amended, is comparable to 33 U.S.C. § 1319(g)(6) as that issue is not before the court.

While this defendant argues Alabama law was amended to conform to §1319, it necessarily occurred after the Eleventh Circuit's January, 2003 opinion in *McAbee,* finding Alabama law insufficient to be "comparable" to § 1319.  Therefore, at the time the Consent Order here was entered pursuant to § 22-22A-5(18), Alabama law was *not* comparable to the federal statute and therefore § 1319(g)(6) does not present a bar to this action.  Additionally, as in the facts before Judge Smith, the defendant here has failed to allege which violations listed by the plaintiff may have been covered by the Consent Order.  *See Cahaba River Society*, at 13.  Rather, the defendant argues that the consent order bars *any* later suit for violations of the permit.  For the reasons set forth above, this court disagrees.

As long as the plaintiff here can establish one current violation not within a consent order, this case may continue.  *See e.g., Gwaltney of Smithfield, LTD v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 58-59, 108 S.Ct. 376, 382, 98 L.Ed.2d 306 (1987).  The plaintiff in this action sues for violations of BOD limitations beginning in 2000.  The court is of the opinion that, given that the Consent Order of November 2001 was not pursuant to any law comparable to 33 U.S.C. § 1319(g)(6), that administrative action cannot bar any of the plaintiff's claims for permit violations, including those predating November, 2001.  Similarly, the court is of the opinion that the November, 2001 Consent Order was not "diligent prosecution" of the later

violations as that actions certainly did not curb such violations.  *See e.g., Friends of Milwaukee Rivers*, 382 F.3d at 762-753.

Lastly, the defendant argues that it pays a "penalty" to the Jasper WWTP each time defendant violates its discharge limits.  Affidavit of James Faison, Vice President of Science and QA for defendant, submitted as def. exhibit 2 to defendant's motion for summary judgment, at ¶¶ 2-3.  This presents no bar to the plaintiff bringing the current action.

### 3.  RES JUDICATA

The defendant also argues that the plaintiff's claims are barred by res judicata. In October, 2002, the State of Alabama and ADEM filed suit against the Jasper WWTP for NPDES permit violations, and the plaintiff filed a motion to intervene in that action.  *See* plaintiff's complaint in intervention, submitted as def. exhibit 7 to defendant's motion for summary judgment.  The plaintiff also filed litigation in the United States District Court for the Northern District of Alabama against the Jasper WWTP.  Defendant claims either or both of these prior actions are a bar to the current action.  The court disagrees.

For res judicata to apply, four factors must be shown: "(1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or

their privies; and (4) both cases must involve the same causes of action." *E.E.O.C. v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1285 (11th Cir.2004), citing *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir.2001) (other citations omitted). Similarly, "collateral estoppel can apply *only* 'when the parties are the same (or in privity) [and] if the party against whom the issue was decided had a full and fair opportunity to litigate the issue in the earlier proceeding." *Pemco Aeroplex, Inc,.* 383 F.3d at 1285 (emphasis in original), citing *In re Southeast Banking Corp.*, 69 F.3d 1539, 1552 (11th Cir.1995) (other citations omitted).  "If identity or privity of parties cannot be established, then there is no need to examine the other factors in determining whether res judicata or collateral estoppel applies." *Pemco Aeroplex, Inc.*, 383 F.3d at 1285.  A party cannot be bound by a judgment in a prior suit in which it was neither a party nor in privity with a party.  *Pemco Aeroplex, Inc.*, 383 F.3d at 1286, citing *Martin v. Wilks*, 490 U.S. 755, 761-62, 109 S.Ct. 2180, 2184, 104 L.Ed.2d 835 (1989); *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 327 n. 7, 99 S.Ct. 645, 649 n. 7, 58 L.Ed.2d 552 (1979); *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.,* 402 U.S. 313, 328-329, 91 S.Ct. 1434, 1442-1443, 28 L.Ed.2d 788 (1971); *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 110, 89 S.Ct. 1562, 1569, 23 L.Ed.2d 129 (1969); *Hansberry v. Lee,* 311 U.S. 32, 40, 61 S.Ct. 115, 117, 85 L.Ed. 22 (1940).

Neither of the two prior cases on which the defendant relies satisfies the four prong standard for res judicata to bar this action.  In the federal court case, which coincidentally was assigned to this judge, the plaintiff dismissed his complaint against Jasper Water Works and Sewer Board before that defendant ever filed an answer. *Patronas v. Jasper Water Works and Sewer Board*, CV 03-J-132-J.  Even if the other elements were established, no final adjudication on the merits ever occurred.  That case cannot act as a bar to this one under the doctrines of res judicata or collateral estoppel.  In the state court litigation, this plaintiff was not a party and this defendant was not a party.[9]  However, the defendant argues that both parties here were in privity with the parties to the state court litigation.[10]

The defendant argues that, although it was not a party to the prior litigation against the Jasper WWTP, it was in privity with the Jasper WWTP, and the plaintiff was in privity with the state, which was acting as *parens patriae*.  "Privity" has been

---

[9]The plaintiff filed a complaint in intervention and a motion to intervene in the Circuit Court for Walker County on November 8, 2002.  In April, 2003, the motion was withdrawn without the court having ruled on said motion. *State of Alabama v. Jasper Water Works and Sewer Board*, CV 02-654.

[10]The defendant glosses over how the state court litigation against the Jasper WWTP for violation of its permit could be the same cause of action as this case against this defendant for violation of its permit.  For res judicata to apply, both cases must involve the same causes of action.  Clearly, two separate lawsuits over two separate discharge permits issued to two separate defendants, one a public wastewater treatment plant and the other a private chicken processing plant, do not involve the same cause of action.  Because the defendant is unable to satisfy this prong to establish res judicata applies, the court is of the opinion that addressing the issue of privity is solely an academic exercise.

defined as "a flexible legal term, comprising several different types of relationships and generally applying when a person, although not a party, has his interests adequately represented by someone with the same interests who is a party." *Pemco Aeroplex, Inc.*, 383 F.3d at 1286, citing *Hansberry,* 311 U.S. at 41-43, 61 S.Ct. at 117-19. Even assuming that the state acted in *parens patriae* in its case against Jasper WWTP, this defendant was not in privity with the Jasper WWTP.[11]  The case before this court involves allegations that a private, for profit corporation violated a permit issued to it.  The two prior cases on which the defendant relies involved a wholly separate entity, a public waste water treatment plant.   None of the defendant's arguments are sufficient for this court to find this case barred by res judicata or collateral estoppel.

Both of the prior cases were against the Jasper WWTP, not this defendant. Additionally, the federal suit against the Jasper WWTP was dismissed voluntarily by the plaintiff.  Nothing was adjudicated in that action.  In the state court case, the

_____

[11]The defendant is apparently relying on the concept of virtual representation.  The doctrine of virtual representation provides in essence that "a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative." *Aerojet-Gen. Corp. v. Askew,* 511 F.2d 710, 719 (5th Cir.1975). Whether a party is a virtual representative of another is a question of fact. *Mesa Petroleum,* 787 F.2d at 1489-90(citing *Astron Indus. Assocs., Inc. v. Chrysler Motors Corp.*, 405 F.2d 958 (5th Cir.1968).  For virtual representation, the defendant must demonstrate "participation in the first litigation, apparent consent to be bound, apparent tactical maneuvering, [and] close relationships between the parties and nonparties." *Jaffree v. Wallace,* 837 F.2d 1461, 1467 (11th Cir.1988) (quoting 18 Wright & Miller, *Federal Practice & Procedure* § 4457, at 494-99) (alteration in original).

plaintiff's motion for intervention was never ruled on by the court, so the plaintiff was never a party to that action.  Therefore, even if this defendant was a party to the prior actions, which it was not, the plaintiff was not a party to either one of the actions.

In consideration of the foregoing, the court finds nothing in the current action to be barred by the doctrine of res judicata.

### B.  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

To prevail on his motion for partial summary judgment, the plaintiff must demonstrate the following elements: (1) there has been a discharge; (2) of a pollutant; (3) into waters of the United States; (4) from a point source; (5) without a NPDES permit,  *Parker v. Scrap Metal Processors, Inc*,. 386 F.3d 993, 1008 (11ᵗʰ Cir.2004), or in violation of the terms of the applicable NPDES permit.  *United States v. Gulf States Steel, Inc.*, 54 F.Supp.2d 1233, 1240 (N.D.Ala.1999).

The defendant does not dispute that "there has been a discharge."  In fact, the defendant fails to dispute any of the 658 violations alleged by the plaintiff occurred.  The defendant admits in its brief that "Marshall Durbin discharges wastewater from its Jasper plant into the Jasper Water Works and Sewer Board's Publicly Owned Treatment Works."  Defendant's response, at 10.  Neither party disputes that BOD is "a pollutant," as that term is defined in the CWA.  Neither party disputes that the Jasper WWTP then discharges to Town Creek, a "water of the United States," as that

term is defined under the CWA.  *See Parker*, 386 F.3d at 1009, citing 33 U.S.C. § 1362(7).

Defendant also does not argue that its discharges do not come from a "point source."  Rather, defendant argues that the fact that because the discharges at issue here are made to the Jasper WWTP and not directly to Town Creek, it is somehow insulated from liability under the CWA.[12]  For purposes of the CWA, a discharge to a publicly owned treatment plant in violation of a NPDES permit limit is the same as a discharge in violation of that permit directly to a waterway.  *See e.g., United States v. Sheyenne Tooling & Manufacturing Co., Inc.*, 952 F.Supp. 1414, 1417-1418 (D.N.D.1996); *United States v. Velsicol Chemical Corp.*, 438 F.Supp.945, 947 (W.D.Tenn.1976) ("The fact that defendant may discharge through conveyances owned by another party does not remove defendant's actions from the scope of this Act").  The reasons were aptly explained by the Court in  *Atlantic States Legal Foundation, Inc. v. Karg Bros., Inc.*, 841 F.Supp. 51, 55 (N.D.N.Y.1993):

> it is clear that the categorical pretreatment standards are not merely isolated limitations on an indirect source's discharge. These standards are based upon the POTW's efficiency of removing certain pollutants, and are therefore an integral part of the overall regulatory scheme

---

[12]This same argument was before the Court in *International Union, United Auto. Aerospace and Agr. Implement Workers of America, AFL-CIO v. Amerace Corp., Inc*. 740 F.Supp. 1072, 1080 (D.N.J.1990).  The defendant argued that "as an indirect discharger it is not liable for any Clean Water Act violations because plaintiffs cannot demonstrate that ESNA wastewater caused the ... POTW to violate its [NPDES] permit."

> designed to reduce water pollution. If either polluter, the indirect discharger or the POTW, exceeds its effluent standards, this integrated regulatory scheme will break down. Accordingly, even assuming that a POTW maintains its efficiency at removing a regulated pollutant and does not exceed its own effluent limitations, an indirect source's violation of the pretreatment standards necessarily contributes to water pollution in an amount greater than the law permits.

*Id.* That court further noted that "if (1) defendant's discharges exceeded the effluent standards, (2) the pollutants reached the waterway, and (3) those pollutants are of the type which cause the 'injury' sustained by the plaintiffs, then the 'injury in fact' is fairly traceable to the defendants' violation." *Id.*

If the court adopted the defendant's argument, the defendant could discharge any amount of pollutant it desired to the Jasper WWTP and never be liable.  This is in direct contravention of the Clean Water Act, which states that "[e]xcept as in compliance with this section and sections 1312, 1316, 1317, 1328, 1342, and 1344 of this title, the discharge of any pollutant by any person shall be unlawful." 33 U.S.C. § 1311(a).  Similarly, 33 U.S.C. § 1317(c) states "[s]uch pretreatment standards shall prevent the discharge of any pollutant into such treatment works, which pollutant may interfere with, pass through, or otherwise be incompatible with such works."

Other courts to consider this issue have all found liability may be placed on an indirect discharger for violations of its discharge limitations.  For example, in *South*

*Holland Metal Finishing Co. v. Browner,* 97 F.3d 932, 934 (7th Cir.1996), the Court

stated:

> Congress passed the Federal Water Pollution Control Act, 33 U.S.C. §§
> 1251-1387, also known as the Clean Water Act, in order "to restore and
> maintain the chemical, physical, and biological integrity of the Nation's
> waters." 33 U.S.C. § 1251. To this end, Congress established a
> comprehensive regulatory scheme to control the direct and indirect
> discharge of waste and pollutants into navigable waters. To curtail
> indirect discharges into sewer systems and POTWs, the EPA
> Administrator is required to promulgate pretreatment standards for
> various industrial categories. 33 U.S.C. § 1317. These "categorical"
> pretreatment standards typically specify the maximum amounts of
> certain pollutants that a source in a particular industrial category may
> discharge into a sewer via its wastewater.

*See also U.S. E.P.A. v. City of Green Forest, Ark.,* 921 F.2d 1394 (8th Cir.1990)(jury

verdict against indirect discharger for permit violations affirmed); *Armco, Inc. v. U.S.*

*E.P.A.* 869 F.2d 975, 979 (6th Cir.1989) (recognizing that "restrictions are imposed on

'indirect dischargers,' which discharge their pollutants into POTWs rather than

directly into navigable waters. Such discharges into POTWs carry the potential to

cause serious problems .... Congress addressed these problems with sections 307(b)-

(d) of the Act, 33 U.S.C. § 1317(b)-(d), which direct USEPA to establish pretreatment

standards 'to prevent the discharge of any pollutant through [POTWs]"); *Arkansas*

*Poultry Federation v. U.S.E.P.A.* 852 F.2d 324, 326 (8th Cir.1988) ("Section 307(b)

of the Act authorizes the Administrator to establish pretreatment standards 'to prevent

the discharge of any pollutant through [POTWs], which pollutant interferes with,

passes through, or is otherwise incompatible with such works'"); *Cerro Copper Products Co. v. Ruckelshaus,* 766 F.2d 1060, 1061 (7th Cir.1985) ("In addition, the Act provides that indirect dischargers--those whose wastewater passes through a publicly owned treatment works plant ('POTW')--pretreat their wastewater discharge before passing it along to the POTW for further treatment"); *Reynolds Metals Co. v. U.S.E.P.A.,* 760 F.2d 549, 553 (4th Cir.1985)("The legislative history indicates that pretreatment standards are analogous to the standards for direct dischargers, *i.e.* the combined treatment of wastewater by an indirect discharger and the POTW should achieve the same level of pollution removal as would be realized if the industrial source were treating wastewater and then directly discharging it. *See* H.R.Conf.Rep. No. 830, 55th Cong., 1st Sess. 87, *reprinted in* 1977 U.S.Code Cong. & Ad.News 4326, 4424, 4462").

This court would have to ignore both § 1317 and the state SID permit process to adopt the defendant's argument.  The defendant's SID permit states on its face that it is issued "in accordance with and subject to the provisions of the Alabama Water Pollution Control Act, as amended, Code of Alabama 1975, §§ 22-22-1 to 22-22-14 (the 'AWPCA'), the Alabama Environmental Management Act, as amended, Code of Alabama 1975, §§ 22-22A-1 to 22-22A-15 ...and subject further to the discharge limitations set forth in this permit ..."  Def. exhibit 1.  Section III.A. of the permit is

entitled "CIVIL AND CRIMINAL LIABILITY." Def. exhibit 1, at 13. Subsection 3.a., "Permit Enforcement," states that "[t]his permit is a permit for the purposes of the AWCPA and the FWCPA, and as such any terms, conditions, and limitations of this permit are enforceable under state and federal law." *Id.*, at 14.

The issue of whether the defendant has discharged to "navigable waters" is the only element of liability which the defendant contests.[13] The defendant also argues, albeit in the context of standing, that the plaintiff cannot prove that defendant's permit violations are the cause of any harm to the waterways in question. The court finds sufficient proof of causation in the record for a finding of liability. *In International Union, United Auto. Aerospace and Agr. Implement Workers of America*, the Court considered the same argument and found as follows:

> ...the categorical pretreatment standards implicitly incorporate a causation element. As numerical limitations, the categorical standards reflect explicit determinations that the discharge of certain concentrations of pollutants will cause interference or pass through. The categorical standards are intended to ensure attainment of "the parity in removals between direct and indirect dischargers that is mandated by the statute." *Natural Resources Defense Council, Inc. v. U.S. Environmental Protection Agency,* 790 F.2d 289, 303 (3rd Cir.1986). "[A]ccording to the language of § 307(b)(1), pollutants from a particular industrial category are deemed to be passing through the POTW in unacceptable amounts where the POTW effluent violates the limit for that pollutant which a direct discharger in that industrial category would be required to meet."

---

[13]The defendant instead chose to focus on the issue of standing in its response to plaintiff's motion for summary judgment (doc. 37).

46 F.R. at 9407 (1981).

....

As the categorical standards implicitly incorporate a causation element, it is unnecessary to demonstrate [a POTW's] NPDES permit violation to assure that industrial users are held liable only for incompatible discharges. If violations of categorical and local standards were not actionable without direct proof of [a POTW's] NPDES permit violations, these standards would be covered by the prohibited discharges standard and thus superfluous.

*International Union, United Auto. Aerospace and Agr. Implement Workers of America, AFL-CIO v. Amerace Corp.*, 740 F.Supp. 1072, 1081-1082 (D.N.J.1990).

That Court continued:

Finally ... the Clean Water Act recognizes neither a good faith nor a de minimis defense. As noted by the Tenth Circuit in *United States v. Earth Sciences, Inc.,* 599 F.2d 368, 374 (10th Cir.1979), "the regulatory provisions of the FWPCA [*i.e.,* the Act] were written without regard to intentionality ... making the person responsible for the discharge of any pollutant strictly liable." Several other courts have held that intent and good faith are irrelevant in actions involving liability for committing NPDES permit violations. *Pennsylvania Environmental Defense Foundation v. Mazurkiewicz,* 712 F.Supp. 1184, 1192 (M.D.Pa.1989); *Student Public Interest Research Group, Inc. v. AT&T Bell Laboratories,* 617 F.Supp. 1190 (D.N.J.1985) .... Analogously, intent and good faith are irrelevant in actions involving the liability of indirect dischargers for committing violations of local and national pretreatment standards.
For the same reasons that intent and good faith are not a defense, there is no de minimis defense.

*Id.,* at 1083.

The court finds no genuine issue of material fact exists with regard to defendant's liability for violation of its permit, and hence the CWA. The court therefore finds that the plaintiff is entitled to judgment in his favor and against the defendant on the issue of liability.

## IV. CONCLUSION

It is therefore **ORDERED** by the court that the defendant's motion for summary judgment be and hereby is **DENIED.** It is further **ORDERED** by the court that the plaintiff's motion for partial summary judgment be and hereby is **GRANTED**. The trial and pretrial conference previously set in this case are **CANCELED**. This case is set for hearing on the sole issue of damages on April 27, 2005 at 9:00 a.m., in Birmingham, Alabama.

**DONE** and **ORDERED** this the 17th day of March, 2005.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

29